UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL FINE,

      Plaintiff,

      v.

FRED MEYER STORES, INC.,
an Oregon corporation, WILLIAM
DAVID LEVIN,

      Defendants.

Civil No. 04-1241-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

      This case is brought by Michael Fine (plaintiff), a former employee of defendant Fred

Meyer Stores, Inc. (FM).  Plaintiff asserts that his termination from employment with defendant

violated the Americans with Disabilities Act (ADA) and Oregon's disability discrimination laws.

Plaintiff also alleges a state law claim for workers' compensation discrimination and raises common law claims of wrongful discharge and battery.

Defendants seek summary judgment, arguing in part that plaintiff was terminated legitimately for being insubordinate and that plaintiff fails to qualify as a disabled person. Oral argument on that motion was heard on October 30, 2006. For the following reasons, defendants' Motion for Summary Judgment [40] is granted to defendants as to plaintiff's federal ADA claim. After considering judicial economy, convenience, fairness and comity, the court declines to exercise supplemental jurisdiction over plaintiff's remaining claims. Accordingly, plaintiff's state disability discrimination claim, his workers' compensation discrimination claim, and common law claims alleging wrongful discharge and battery are dismissed without prejudice to permit plaintiff to re-file them in state court.

## BACKGROUND

Plaintiff worked for FM at its Reclamation Center. The Center is managed by co-defendant William David Levin (Levin), a facility manager, and Donna Smith (Smith), a supervisor who reports to Levin.

Employees in plaintiff's position are covered by a collective bargaining agreement that includes termination provisions and grievance procedures. Plaintiff signed a form when he was hired in which he acknowledged FM's prohibition against disorderly conduct, threatening behavior, and insubordination, including disobeying instructions or exhibiting disrespectful conduct toward a supervisor.

There is no material dispute that plaintiff advised Levin or other representatives of FM that plaintiff suffered from a variety of medical conditions including a bipolar condition, asthma,

and a leg injury. Plaintiff contends he told defendants about his conditions when he was hired and during the months preceding August 2003, after confusion arose as to when he would qualify for medical insurance.

Plaintiff believed that he would earn medical insurance after six months of working at FM. When that proved untrue, he sought help regarding how to pay for medication that he needed. Co-defendant Levin helped plaintiff obtain insurance coverage through FM's "Gold Star" program, which provided money to plaintiff for his medications. Plaintiff emphasizes that he sought assistance and treatment for an injury to his shoulder, and believes he was misled as to when he would qualify for medical insurance. Although plaintiff expresses frustration about these arrangements to assist plaintiff, no evidence is presented that any need for accommodation was described by plaintiff, or that he requested accommodation for alleged disabilities from FM.

The incidents leading directly to plaintiff's termination began in early December 2003. Plaintiff had been transferred to a work station that he claims aggravated his shoulder injury. On Friday, December 5, 2003, plaintiff reported that his shoulder was hurting him and that he wanted to see a doctor. He met with Smith and Levin twice, and told them that he wanted to make a claim for workers' compensation and complete an incident report.

A Safety Manager, Amy Dillon (later taking the surname "Stevens" but hereinafter referred to as Dillon), met with plaintiff on December 5, 2003. Plaintiff alleges that Dillon chastised him for delaying his report about his injury, and then counseled him to take Ibuprofen over the weekend and return to work on Monday. Allegedly, she offered to return on Monday to examine his workstation if he continued experiencing problems.

Plaintiff returned to work early on Monday, December 8, 2003, and sought meetings with Smith three times.  She allegedly assigned plaintiff to a different work station, and agreed to call Dillon after Dillon reported to work.

Defendants allege that Smith explained that plaintiff could not begin work before the start of his shift, and plaintiff allegedly became argumentative.  Smith asked plaintiff to leave her office.

Plaintiff asserts that he called Dillon directly.  Dillon came to the Center, met with Smith and Levin, and agreed to see plaintiff.  Allegedly, she told plaintiff to keep taking Ibuprofen and to return to work.  Later that afternoon, plaintiff reported to Smith that he was in pain and he asked her for Ibuprofen.  She refused to provide any.  About thirty minutes later plaintiff returned to Smith's office.  Levin was there.  Plaintiff said he needed to leave to see a doctor. Levin replied that he would call Dillon.  Defendants assert that plaintiff became argumentative again, and intimidated Smith.

Plaintiff contends that he was not intimidating, but instead left Smith's office and sought advice from a fellow co-worker and union member, Ed Maertens.  Plaintiff alleges that as he was talking to Maertens, Levin approached and instructed him to leave the work floor and to report to Smith's office.  Plaintiff says he requested the presence of a union representative, and Levin ignored him.

Plaintiff alleges that once in Smith's office, Levin told plaintiff that he was suspended. Plaintiff requested that Levin put the reasons for the suspension in writing, but Levin refused. Levin called security, and when plaintiff stood to leave, Levin allegedly grabbed plaintiff's right

biceps roughly and painfully.  Plaintiff later was examined by a nurse practitioner at Providence Medical Center.

Defendants dispute plaintiff's recitation of these events.  Defendants allege that plaintiff announced that he was going to see a doctor about his shoulder, and asked Levin to inform Dillon.  Levin asked plaintiff to wait in Levin's office while Levin attempted to find Dillon.  Plaintiff allegedly left, however, and entered the warehouse area.  Defendants assert that Levin found plaintiff in the warehouse area and instructed plaintiff to return to Levin's office.  Plaintiff refused.  Levin advised plaintiff that if plaintiff continued to refuse, Levin would suspend plaintiff.  Plaintiff continued to refuse, and Levin suspended him and instructed him to leave the premises.  Plaintiff instead went into Smith's office, sat down, and made a telephone call.  When plaintiff left, he chose to go through a doorway in which Levin was standing instead of another doorway.  As plaintiff approached, Levin raised his hand.  Plaintiff walked past, causing contact between plaintiff's arm and Levin's hand.

Plaintiff next asserts that on Tuesday, December 9, he telephoned both Smith and Levin about being released to do light work.  Plaintiff says Levin never prohibited plaintiff from returning to work to submit a claim for workers' compensation benefits.

Defendants assert that on December 9, plaintiff telephoned Levin to ask when he could return to work.  Plaintiff was instructed to not return until notified.

Plaintiff alleges that on Wednesday, December 10, plaintiff was meeting with a union representative when Dillon called him. That afternoon, plaintiff returned to the Center to submit workers' compensation papers.  He went to Smith's office and attempted to hand her papers.  She allegedly refused to accept the papers.  Smith allegedly told plaintiff that he was suspended and

Page 5    Opinion and Order

needed to leave the premises.  After plaintiff explained that he needed to remove belongings from his locker, Smith allegedly blocked his access to the locker.  Plaintiff called 911 and waited for police to arrive.

Later that day, Levin telephoned plaintiff and told him he was terminated.  Plaintiff later wrote a letter to FM Employee Relations pursuant to complaint resolution procedures.  Allegedly this letter was never answered.

Defendants assert that on December 10 plaintiff telephoned the Reclamation Center to report that he was coming in to submit paperwork pertaining to his workers' compensation claim and to pick up some belongings.  Smith advised plaintiff to not come in, and instructed plaintiff to call Dillon about the paperwork instead.  Nevertheless, plaintiff appeared at Smith's office that day.  Smith asked plaintiff to leave repeatedly.  Plaintiff refused until security personnel arrived.

Defendants also assert that Levin was absent from the Center on December 10.  When he reviewed plaintiff's conduct with Smith and other witnesses, including persons who allegedly described plaintiff as engaging in agitated shouting, Levin decided to terminate plaintiff.

## PLAINTIFF'S CLAIMS

Plaintiff asserts five claims.  The first claim is brought under the ADA, 42 U.S.C. § 12201, *et seq.,* and alleges that FM discriminated against plaintiff because of a disability and/or refused to reasonably accommodate his disability.  Plaintiff also asserts claims under ORS 659A.040, alleging discrimination because plaintiff applied for workers' compensation benefits (second claim), and ORS 659A.112 and 659A.118, alleging that FM discriminated against plaintiff because of a disability and/or refused to reasonably accommodate his disability (third claim).  Plaintiff's fourth claim is that FM wrongfully discharged him.  Plaintiff's fifth claim is

against defendant Levin, alleging that Levin committed a battery when he grabbed him by his arm as plaintiff attempted to get past him.

**PENDING MOTION**

 Defendants move for summary judgment on all claims.  As to the ADA claim, defendants contend that plaintiff has not established that he is a "qualified individual with a disability," because he has not shown himself to suffer from a physical or mental impairment that substantially limits one or more of his major life activities.  Moreover, even if plaintiff were a qualified individual under the ADA, he never requested any accommodation from FM and has acknowledged that medications adequately control his impairments.

Defendants also assert that there is no issue of fact as to whether FM discriminated against plaintiff under the state statutory equivalent to the ADA, or whether FM discriminated against plaintiff for invoking Oregon's workers' compensation procedures.  Defendants also seek summary judgment for the wrongful discharge claim, asserting that plaintiff was not wrongfully discharged and that, at any rate, the claim is moot because there is an adequate statutory remedy available.  Defendants seek summary judgment on the battery claim on grounds that there is an applicable exclusive statutory remedy preempting this claim.

**STANDARDS**

    **1.**    **Summary Judgment**

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  The moving party carries the initial burden of proof and

meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000), citations omitted. All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005), citation omitted. Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981), citing Fed. R. Civ. P. 56(c).

Deference to the non-moving party does have limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986).

Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

However, the Ninth Circuit recognizes a high standard for granting summary judgment in employment discrimination cases. Courts should require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that is most appropriately

conducted by the fact-finder, upon a full record. *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).

    **2.**      **Disability Discrimination**

    The ADA prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability and, in some cases, against persons perceived to be disabled. Specifically, it provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. 12112(a); *see also* § 12111(2).

    The Ninth Circuit analyzes ADA cases using the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003). As set out under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination. To establish a *prima facie* case of discrimination in violation of the ADA, a plaintiff must prove: 1) that he or she is a qualified individual with a disability; 2) that he or she has suffered an adverse employment action; and 3) that a causal connection exists between the adverse employment action and the disability. *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001); *see also Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). The requisite degree of proof necessary to establish a *prima facie* case of discrimination on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Section 12111(8). The ADA and O.R.S. 659.400 define an individual with a disability as someone who has (1) a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) a record of the impairment; or (3) is regarded as having an impairment. 42 U.S.C. § 12102(2)(A); O.R.S. 659.400(1).

Three factors are to be considered in determining whether an individual is substantially limited in a major life activity: "(1) The nature and severity of the impairment; (2) the duration or expected duration of the impairment; (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

Under the regulations, "major life activity" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I); *see also* O.R.S. 659.400(2)(a) ("self-care, ambulation, communication, transportation, education, socialization, employment and ability to acquire rent or maintain property").

Being "substantially limited" refers to an individual's inability to perform a major life activity as compared to the average person in the general population, or a significant restriction "as to the condition, manner, or duration" under which an individual can perform the particular activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii); *see also Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539-40 (9th Cir. 1997).

Page 10    Opinion and Order

The ADA definition of discrimination includes "not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A).  "Reasonable accommodation" means that, "in certain instances, employers must make special adjustments to their policies for individuals with disabilities."  *McAlindin v. Co. of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 1999), citing *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 334-35 (2nd Cir. 1995) (rejecting argument that reasonable accommodation "requires only equal treatment").  The ADA places a "duty to accommodate" on employers in order to remove barriers that could impede the ability of qualified individuals with disabilities to perform their jobs.  *McAlindin*, 192 F.3d at 1237.

Once a *prima facie* case is presented by a plaintiff, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  The plaintiff is then afforded an opportunity to demonstrate that the employer's proffered reason was pretextual, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Oregon's Discrimination Against Disabled Persons in Employment Act (the Oregon Act) is in part modeled after the ADA and contains language that is similar to the ADA.  *Wheeler v. Marathon Printing, Inc.*, 974 P.2d 207, 213 n.6  (Or. App. 1998).  The Oregon Act provides that "O.R.S. 659A.112 to 659A.139 shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as

amended."  O.R.S. 659A.139. Oregon's law tracks the ADA and defines "disability" in an

identical manner.  ORS 659A.100; *see also Centennial School Dist. No. 28J v. Oregon Bureau of

Labor and Industries*, 169 Or. App. 489, 504-506, 10 P.3d 945 (2000) (applying federal

jurisprudence interpreting ADA definition of "disability" to Oregon law).

     Although Oregon courts analyzing claims under the Oregon Act have rejected the

*McDonnell Douglas* burden-shifting approach, *see Callan v. Confederation of Oregon School

Administrators*, 717 P.2d 1252, 1254 (Or. App. 1986), that approach is maintained for assessing

Oregon employment discrimination claims brought in federal court.  *See Snead v. Metro. Prop.

& Cas. Ins. Co.*, 237 F.3d 1080, 1092-93 (9th Cir. 2001).  "The standard for establishing a *prima

facie* case of discrimination under Oregon law is identical to that used in federal law."  *Id*. 237

F.3d at 1087.

     **3.**     **Supplemental Jurisdiction**

     A district court may decline to exercise supplemental jurisdiction over a claim if "the

district court has dismissed all claims over which it has original jurisdiction."  42 U.S.C. §

1367(a)(3).  "In the usual case in which all federal law claims are eliminated before trial, the

balance of the factors to be considered under the pendant jurisdiction doctrine – judicial

economy, convenience, fairness and comity – will point toward declining to exercise jurisdiction

over the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

(1988); *see also Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley

Landscape & Maint., Inc.*, 333 F.3d 923, 926 (9th Cir. 2003) (it is appropriate for a district court

to decline jurisdiction over supplemental state claims when the federal claim was unfounded).

For the reasons that follow, defendants are entitled to summary judgment regarding plaintiff's sole federal claim.  After considering the issues of judicial economy, convenience, fairness and comity as they apply to the adjudication of plaintiff's remaining claims, this court concludes that those claims would be best addressed in a state court.  Accordingly, this court declines to exercise its jurisdiction over the remaining state law claims, and these claims are dismissed without prejudice.  Although, as noted above, Oregon's disability discrimination law tracks the ADA and is to be construed consistently with the ADA, this court acknowledges that an Oregon court could plausibly interpret plaintiff's state disability discrimination claim differently than this court has resolved plaintiff's ADA claim.

**ANALYSIS**

  **1.  ADA Claim and Related State Claim**

At the outset, it should be noted that individuals who are "regarded as" disabled also receive protection under other subsections of the ADA.  *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488-89 (1999).  After viewing the evidence in the best possible light for plaintiff, there is no evidence that could be construed as suggesting that defendants regarded or perceived plaintiff as disabled in a major life activity.  After plaintiff advised FM of some medical issues, FM assisted in expediting insurance coverage for plaintiff and providing other benefits to assist plaintiff.  During this time, there is no evidence that any representative from FM perceived plaintiff to be substantially limited in any life activity.

Accordingly, to advance his claims brought under the ADA and Oregon's disability discrimination statute, plaintiff must instead show that he was a "qualified individual with a disability," that is, that he qualifies as "disabled" under § 12102(2) of the Act.  As addressed

above already, the applicable statutes require a plaintiff to establish that he or she has (1) a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) a record of the impairment; or (3) is regarded as having an impairment.  42 U.S.C. § 12102(2)(A); O.R.S. 659.400(1).  These standards must be met for plaintiff to support his claims brought under the ADA and O.R.S. 659.400, regardless of the myriad factual disputes that the parties present regarding plaintiff's termination.

Plaintiff argues correctly that determining whether a disability exists should be done on a case-by-case basis.  Pl.s Response at 13.  Plaintiff also concedes that he was able to do his job while on medication.  *Id*.  Nevertheless, plaintiff argues that although not substantially limited in the major life activity of work, he has "periods of adjustment" to his medication and there are issues of material fact as to whether plaintiff is substantially limited in other major life activities when he is not on medication.

That a person has a medical condition, even one that affects his or her choice and range of activities, does not make that person disabled without a showing that the condition restricts a "major life activity."  *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 202 (2002). Whether a claimed condition meets the ADA's standard of "disability" must be evaluated in the context of how the condition affects the individual plaintiff.  *Id*. at 198.

The Supreme Court has also held that if a person is taking measures to correct for, or to mitigate, a physical or mental impairment, the effects of those measures – both positive and negative – must be taken into account when judging whether that person is "'substantially limited' in a major life activity and thus 'disabled' under the Act."  *Sutton*, 527 U.S. at 482.

Page 14    Opinion and Order

In *Sutton*, severely myopic job applicants brought a disability discrimination claim against their employer, an airline, challenging the airline's minimum vision requirement for pilots. The Supreme Court upheld the lower court's decision to dismiss the action for failure to state a claim upon which relief can be granted. The Court held that these plaintiffs could not be construed as disabled under the ADA because with corrective measures such as eyeglasses or contact lenses, they enjoyed normal vision or better and could function identically to individuals without a similar eye problems.

In this case, plaintiff acknowledges that he is not limited in the major activity of "work," and also that medication mitigates his impairment – he testified in deposition that when on medications he needed no accommodations. Ex. A, Affidavit of Kent Pearson at 5. Plaintiff fails to resolve why the mitigation of his medications should not be a basis for determining that he fails to meet the standards of a "qualified individual" under the ADA.

Plaintiff's references to his alleged substantial limitations are cursory, unsupported by independent evidence, and fail to address the nature and extent of mitigation achieved through medication. His own declarations refer to adjustments he must make while taking medications, and reiterate that he experienced frustration in obtaining those medications.

These declarations alone fall short of establishing that plaintiff is somehow substantially limited in a major life activity. Accordingly, there are insufficient grounds to support the assertions made in plaintiff's Complaint that plaintiff qualified as disabled under the ADA, or believed himself to be disabled, or was substantially limited in a major life activity.

Even assuming plaintiff could meet the minimal standard for presenting a *prima facie* claim under the ADA, which he fails to do, plaintiff also cannot meet his burden of showing that

FM terminated him because of a disability. *See Kennedy*, 90 F.3d at 1481. Plaintiff's repeated, undisputed insubordination directed toward his supervisors provides a legitimate non-discriminatory basis for his termination.

Plaintiff concedes that he knew he could be terminated for insubordination, and that co-defendant Levin had to request repeatedly that he leave the warehouse floor or he would be suspended. Plaintiff fails to demonstrate that his termination was causally connected to a disability and fails to establish that FM's legitimate reasons for suspending plaintiff and ultimately terminating plaintiff because of his insubordination were in any way pretextual.

Moreover, plaintiff's assertion that FM failed to accommodate him is specious. It is undisputed that FM assisted him in obtaining medication by offering him access to its Gold Star program. While plaintiff complains that FM's efforts to enroll plaintiff in its Gold Star program so he could obtain medication were largely unhelpful, plaintiff's frustrations with that program's efficiency do not amount to a refusal by FM to reasonably accommodate an established disability suffered by plaintiff.

### 2.    State Law Claims

As discussed above, this court declines to exercise its jurisdiction over plaintiff's remaining state law claims, and these claims are dismissed without prejudice.

## CONCLUSION

Defendants are entitled to judgment as to plaintiff's ADA claim because plaintiff cannot establish that he is a qualified disabled individual. Defendants' Motion for Summary Judgment [40] is granted in part, as to that federal claim. This court declines to exercise its jurisdiction over plaintiff's remaining state law claims. Accordingly, plaintiff's claims alleging workers'

compensation discrimination, disability discrimination under the Oregon Act, and common law

claims of wrongful discharge and battery are dismissed without prejudice.

IT IS SO ORDERED.

DATED this __22__ day of November, 2006.

_____/s/ ANCER L. HAGGERTY_____
Ancer L. Haggerty
United States District Judge