UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL FINE,

    Plaintiff,　　　　　　　　　　　　　　　　Civil No. 04-1241-HA

    v.　　　　　　　　　　　　　　　　　　　OPINION AND ORDER

FRED MEYER STORES, INC.,
an Oregon corporation, WILLIAM
DAVID LEVIN,

    Defendants.

HAGGERTY, Chief Judge:

    On November 27, 2006, this court entered Judgment [64] concluding that defendants were entitled to Judgment as to plaintiff's sole federal claim and that, in light of that, plaintiff's remaining claims must be dismissed without prejudice due to a lack of federal jurisdiction. Subsequently, plaintiff Michael Fine (plaintiff) asserted a Motion for Reconsideration [67]. In

Page 1    Opinion and Order

this motion, plaintiff re-asserts his belief that he has presented evidence sufficient to withstand summary judgment that his termination from employment with defendant Fred Meyer, Inc. (defendant or FM) violated the Americans with Disabilities Act (ADA) and Oregon's disability discrimination laws.  Alternatively, plaintiff seeks an Order from this court remanding plaintiff's state law claim for workers' compensation discrimination and common law claims of wrongful discharge and battery, so as to avoid the payment of new filing fees and any delays in collecting the amounts necessary for paying those fees.

**BACKGROUND**

The applicable factual background was presented thoroughly in this court's prior ruling and that background is incorporated in this analysis.  Plaintiff worked for FM at its Reclamation Center.  The Center is managed by co-defendant William David Levin (Levin), a facility manager, and Donna Smith (Smith), a supervisor who reports to Levin.

When hired, plaintiff signed a form in which he acknowledged FM's prohibition against disorderly conduct, threatening behavior, and insubordination, including disobeying instructions or exhibiting disrespectful conduct toward a supervisor.  Defendants were aware that plaintiff suffered from a variety of medical conditions including a bipolar condition, asthma, and a leg injury.  Plaintiff sought help regarding how to pay for medication that he needed.  Co-defendant Levin helped plaintiff obtain insurance coverage through FM's "Gold Star" program, which provided money to plaintiff for his medications.  Although the evidence suggests that plaintiff was frustrated about the effectiveness of these arrangements to assist plaintiff, no evidence has been presented that plaintiff needed or requested accommodation for alleged disabilities from FM.

Page 2     Opinion and Order

As reviewed previously, the incidents leading directly to plaintiff's termination began in early December 2003.  On Friday, December 5, 2003, plaintiff reported that his shoulder was hurting him and that he wanted to see a doctor.  Safety Manager Amy Dillon (later taking the surname "Stevens" but hereinafter referred to as Dillon), met with plaintiff on that day.  Plaintiff alleges that Dillon chastised him for delaying a report about an injury, and then counseled him to take Ibuprofen.  Allegedly, she offered to return on Monday to examine his workstation if he continued experiencing problems.

Plaintiff returned to work early on Monday, December 8, 2003, and sought meetings with his supervisor Smith three times.  She allegedly assigned plaintiff to a different work station, and agreed to call Dillon after Dillon reported to work.

The parties appear to dispute the scope and extent of plaintiff's subsequent insubordination on December 8, 2003.  Plaintiff seeks reconsideration on grounds that a jury should be permitted to determine whether defendants' subsequent suspension of plaintiff was "based on [an] unlawful perception of disability."  Pl.'s Reply in Supp. of Mot. Recons. at 3.

This court's prior conclusion that defendants were entitled to summary judgment as to plaintiff's ADA claim was drawn from plaintiff's failure to establish that he should have been construed as a "qualified individual with a disability" under the applicable statutes because he has not shown himself to suffer from a physical or mental impairment that substantially limits one or more of his major life activities.  Moreover, even if plaintiff were a qualified individual under the ADA, he never requested any accommodation from FM and has acknowledged that medications adequately control his impairments.

**STANDARDS**

This court has acknowledged that a party seeking summary judgment carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). However, this court also noted the standard that once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

Although courts should require very little evidence to survive summary judgment in a discrimination case (because the ultimate question is one that is most appropriately conducted by the fact-finder, upon a full record), the court's obligation to view evidence in the light most favorable to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Even though factual allegations in a motion for summary judgment must be viewed in the light most favorable to the non-moving party, summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Rubino v. Co. of San Diego*, No. 05-942, 2007 WL 935607, *5 (S.D. Cal. March 12, 2007) (citing *Broussard v. Univ. of Cal.*, 192 F.3d 1252, 1258 (9th Cir. 1999), footnote and internal quotations omitted).

As noted previously, to establish a *prima facie* case of discrimination in violation of the ADA, a plaintiff must prove: 1) that he or she is a qualified individual with a disability; 2) that he or she has suffered an adverse employment action; and 3) that a causal connection exists between the adverse employment action and the disability. *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001); *see also Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Section 12111(8).

Three factors are to be considered in determining whether an individual is substantially limited in a major life activity: "(1) The nature and severity of the impairment; (2) the duration or expected duration of the impairment; (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

Under the regulations, "major life activity" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). Being "substantially limited" refers to an individual's inability to perform a major life activity as compared to the average person in the general population, or a significant restriction "as to the condition, manner, or duration" under which an individual can perform the particular activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii); *see also Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539-40 (9th Cir. 1997).

///

ANALYSIS

### 1.   Plaintiff Failed to Establish that he is a "Qualified Individual"

As noted above and in this court's prior ruling, to advance his claims brought under the ADA, plaintiff was required to show that he was a "qualified individual with a disability," that is, that he qualifies as "disabled" under § 12102(2) of the Act.  Again, this means plaintiff had to establish that he has (1) a physical or mental impairment that substantially limits one or more of his major life activities; (2) a record of the impairment; or (3) is regarded as having an impairment.  42 U.S.C. § 12102(2)(A); O.R.S. 659.400(1).

That a person has a medical condition, even one that affects his or her choice and range of activities, does not make that person disabled without a showing that the condition restricts a "major life activity."  *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 202 (2002).  Whether a claimed condition meets the ADA's standard of "disability" must be evaluated in the context of how the condition affects the individual plaintiff.  *Id*. at 198.

Although plaintiff reiterated in his Motion for Reconsideration his prior descriptions about his conditions, the court nevertheless finds that plaintiff fails to raise a triable issue of material fact that his medical conditions substantially limit a major life function.  His descriptions of alleged impairment fail to establish that he is substantially limited in a major life activity.

Moreover, his undisputed testimony that his impairments can be mitigated is dispositive. The Supreme Court has held that if a person can take measures to correct for, or to mitigate, a physical or mental impairment, then the effects of those measures – both positive and negative – must be taken into account when judging whether that person is "'substantially limited' in a major

life activity and thus 'disabled' under the Act." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999).

In *Sutton*, myopic job applicants brought a disability discrimination claim against their employer, an airline, challenging the airline's minimum vision requirement for pilots. The Supreme Court upheld a decision to dismiss the action. The Court held that these plaintiffs could not be construed as disabled under the ADA because with corrective measures such as eyeglasses or contact lenses, they enjoyed normal or better vision and could function identically to individuals without similar eye problems.

In this case, plaintiff acknowledged explicitly in testimony during deposition that when on medications he needed no accommodations. He was asked specifically whether he needed accommodations in order to do his job. His reply was straightforward: "I'd say on medications, no, probably not at all." Ex. A, Affidavit of Kent Pearson at 5.

Plaintiff fails to address why the mitigation of his medications should not be an independent basis for determining that he fails to meet the standards of a "qualified individual" under the ADA. In his Motion for Reconsideration, plaintiff contends only that his medications fail to "completely control [his] disorder," and that plaintiff "was unable to obtain medication in a regular manner. . . ." Pl'.s Mot. for Recons. at 12.

Plaintiff's opinion of the scope of his medication's effectiveness fails to raise a question of fact in light of plaintiff's conclusive acknowledgment that when he is medicated he needs no accommodation to do his job. A disability determination "does not depend upon hypotheticals," such as what an individual might face if the individual could mitigate a condition but did not do so. *Fraser v. Goodale*, 342 F.3d 1032, 1038 (9th Cir. 2003) (citing *Sutton*, 527 U.S. at 482).

"Instead, the disability determination depends on whether the limitations an individual with an impairment actually faces are in fact substantially limiting." *Id*. at 1038-39 (internal quotation omitted). The Supreme Court's view is clear:

> A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not "substantially limi[t]" a major life activity.

*Sutton*, 527 U.S. at 482-83; *see also Emerson v. N. Idaho College*, No. 05-425, 2006 WL 3253585, *5 (D. Idaho November 6, 2006) (plaintiff failed to demonstrate that alleged hearing impairment substantially limits a major life activity because she did not seek to have her hearing problem diagnosed or treated or take any measures to mitigate her claimed problem).

Plaintiff's Motion for Reconsideration also fails to present grounds for overturning the alternative grounds that compel granting summary judgment to defendants on plaintiff's ADA claim. As noted in this court's prior ruling, plaintiff cannot meet his burden of showing that FM terminated him because of a disability. *See Kennedy*, 90 F.3d at 1481. Beyond submitting an unsupported affidavit that denies some of the incidents of insubordination, plaintiff fails to overcome or refute the record regarding his repeated insubordination directed toward his supervisors. Such conduct provided a legitimate non-discriminatory basis for his termination. Plaintiff attempts to construe defendants' reactions to his insubordination as a form of "palpable disdain" that defendants held toward plaintiff because of his alleged disability. Pl.'s Mot. for Recons. at 12. There is no evidence presented that supports this theory. Plaintiff's colorful

arguments that defendants viewed him as a "mental case," *id*., are unsubstantiated and lack credibility in the face of overwhelming evidence to the contrary – defendants nominated plaintiff to FM's "Gold Star" program and provided assistance to him. Plaintiff's characterizations of defendants' conduct and speculations as to defendants' motives after his insubordination fail to demonstrate that his termination was causally connected to a disability and fail to establish that FM's legitimate reasons for suspending plaintiff and ultimately terminating plaintiff because of his insubordination were pretextual.

Finally, plaintiff requests that this court vacate its prior Judgment and instead remand this action to state court for final adjudication of plaintiff's remaining state law claims, which were dismissed without prejudice. Plaintiff contends that this modification will promote "judicial efficiency" because plaintiff would not have to pay new filing fees. Pl.'s Mot. for Recons. at 12.

Plaintiff presents no authorities for interpreting a court's discretion regarding the disposition of what were referred to historically as "pendent state law claims" in a way that incorporates a concern for saving a plaintiff the expense of filing fees. This court finds no authority for doing so, either, and this request is denied.

**CONCLUSION**

Plaintiff's Motion for Reconsideration [67] has been evaluated and is determined to be without merit. That Motion is denied. Defendants' judgment as to plaintiff's ADA claim remains undisturbed for the reasons stated in this Opinion and Order and the court's prior ruling. Plaintiff's alternative request for remand of plaintiff's remaining state law claim is also denied.

This court has also considered defendants' Bill of Costs [65], seeking $874.60 to be taxed against plaintiff. The Americans with Disabilities Act provides that the court in its discretion "may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses and costs." 42 U.S.C. § 12205.

Without deciding whether defendants should be construed as the prevailing party in this matter, this court concludes that the Bill of Costs must be rejected. This court acknowledges that strong policy considerations support awarding attorney's fees to prevailing *plaintiffs* in ADA cases. These policy considerations are not present in the case of a prevailing defendant in such cases. *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 418-19 (1978). "To the contrary, awards to prevailing defendants could have a chilling effect on the filing of ADA lawsuits by plaintiffs. For this reason, fees are not awarded as a matter of course to prevailing defendants, and should only be awarded under exceptional circumstances, 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'" *Peters v. Winco Foods, Inc.*, 320 F. Supp. 2d 1035, 1037 (E.D. Cal. 2004) (quoting *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1154 (9th Cir. 1997)). This court views an award of costs, and defendants' Bill of Costs in particular, similarly. Because there is no basis for viewing plaintiff's action as frivolous, unreasonable, or without foundation, defendants' proposed Bill of Costs [65] is denied.

IT IS SO ORDERED.

DATED this  3   day of May, 2007.

                                              /s/ Ancer L. Haggerty
                                                Ancer L. Haggerty
                                        United States District Judge